1126-85

06 CV 2391

DE ORCHIS & PARTNERS, LLP
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700

Attorneys for Plaintiff
Atlantic Container Line, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ATLANTIC CONTAINER LINE, INC.

                Plaintiff,

      - against -

CONTINENTAL INSURANCE CO., NATIONAL
UNION FIRE INSURANCE CO., AIG
INSURANCE CO., LEXINGTON INSURANCE
CO. FIREMANS FUND INSURANCE CO., and
LOCKTON COMPANIES, INC.

                Defendants.
---------------------------------------------------------------X

06 Civ. _____ (   )

**COMPLAINT**

**WITH DEMAND FOR JURY TRIAL**

      Plaintiff, ATLANTIC CONTAINER LINE, INC. (hereinafter "ACL"), by its attorneys DEORCHIS & PARTNERS LLP, as and for its Complaint against the Defendants, CONTINENTAL INSURANCE CO., NATIONAL UNION FIRE INSURANCE CO., AIG INSURANCE CO., LEXINGTON INSURANCE CO., FIREMANS FUND INSURANCE CO., and LOCKTON COMPANIES, INC. alleges upon information and belief as follows:

    1.    Plaintiff is a Swedish corporation which operates as an ocean carrier to and from the United States, having a place of business at 194 Wood Avenue South, Suite 500, Iselin, New Jersey 08830-4120.  Defendants are insurance companies all incorporated outside of New Jersey with their principle places of business located in other states.  The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

2. Venue is properly placed under 28 U.S.C. § 1391, and in accordance with the terms of the insurance and other contracts that are the subject of this suit.

3. At all times hereinafter mentioned, Defendant CONTINENTAL INSURANCE CO., was and is an insurance corporation organized and existing under the laws of the State of Illinois and with a principal place of business located in 333 S. Wabash, Fl. 1, Chicago, Illinois 60604-4153.

4. At all times hereinafter mentioned, Defendant NATIONAL UNION FIRE INSURANCE CO., was and is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has a place of business located in New York at 70 Pine Street, New York, New York 10270.

5. At all times hereinafter mentioned, Defendant AIG INSURANCE CO., was and is a corporation organized and existing under the laws of the State of Delaware and with a principal place of business located in 2711 Centerville Road, Suite 400, Wilmington, Delaware, and has a place of business located in New York at 70 Pine Street, New York, New York 10270.

6. At all times hereinafter mentioned, Defendant LEXINGTON INSURANCE CO., was and is a corporation organized and existing under the laws of the State of Massachusetts and with a principal place of business located at 100 Summer Street, Boston, Massachusetts 02110. LEXINGTON INSURANCE CO. is a subsidiary of AIG that has a place of business located in New York at 70 Pine Street, New York, New York 10270.

7. At all times hereinafter mentioned Defendant FIREMANS FUND INSURANCE CO. was and is a corporation organized and existing under the laws of the State of California

and with a principal place of business located at 777 San Marin Drive, Novato, California, 94998. FIREMANS FUND INSURANCE CO. has a place of business located at 75 Wall Street, 19th Floor, New York, NY 10005-2833.

8. At all times hereinafter mentioned Defendant LOCKTON COMPANIES, INC., in incorporated in Missouri, and maintains a principal place of business at 444 W 47th St., Suite 900, Kansas City, MO 64112, and maintains an office located at 641 Lexington Avenue, New York, NY 10022.

## FACTUAL BACKGROUND

9. Plaintiff, Atlantic Container Line, is an ocean common carrier who regularly does business in the United States and employs motor carriers that pick up containers of cargo discharged at U.S. ports by ACL for overland delivery to consignees of cargo at various inland locations.

10. In order to carry ACL containers, chassis and/or cargo overland in the United States, motor carriers doing business with ACL were required by ACL to carry certain insurance coverage, and to provide to ACL "Certificates of Insurance" from their underwriters certifying that the truckers carry the required amount of insurance.

11. ACL relied on the Certificates of Insurance to make certain that motor carriers it hired were financially responsible. Federal and State laws and regulations also require motor carriers to carry insurance.

12. That on or about October 21, 1993, the Defendants jointly issued and delivered to ACL in New York State, though ACL's broker, the Defendant, LOCKTON COMPANIES, INC. a certain "Certificate of Insurance" executed and attested by their authorized representative, certifying that Trism Specialized Carriers, Inc., their insured, was covered for

3

certain stated amounts by various insurance policies they had issued, for the period November 1, 1993, to November 1, 1994. Copy of said Certificate of Insurance is attached hereto as Exhibit A.

13. The Defendant, LOCKTON COMPANIES, INC. acting as an insurance broker placed the insurance on behalf of Trism Specialized Carriers, Inc. LOCKTON COMPANIES, INC. had knowledge that third-parties would be relying on certificates of insurance provided by this Defendant. LOCKTON COMPANIES, INC., acting as a broker and/or agent, arranged for and allowed the "Certificate of Insurance" to be issued when insurance coverage was in fact illusory, since the deductible ($250,000) was equivalent in value to the amount of coverage under the insurance policy ($250,000).

14. LOCKTON COMPANIES, INC. was negligent in allowing certificates of insurance to be issued for required coverage when they knew the coverage was illusory. LOCKTON COMPANIES, INC. also breached their obligation as a licensed broker/agent to act in good faith in providing third-party beneficiaries with information about the insurance policies procured by Trism Specialized Carriers, Inc.

15. ACL's contract with Trism, as motor carrier, required Trism to carry insurance coverage for commercial general liability for property damage to ACL's cargo carried by Trism's trucks.

16. Relying on the Certificate of Insurance, Exhibit A, Plaintiff ACL entrusted to Defendants' assured, Trism, in July, 1994, certain valuable cargo at the Port of Baltimore, Maryland for land carriage to ACL's consignee at Terre Haute, Indiana. ACL believed that they were an intended beneficiary of the contract of insurance.

17. Said cargo was damaged as a result of Trism's negligence en route to destination on or about July 23, 1994. The cargo owner sued ACL and ACL impleaded Trism in the United States District Court, Southern District of Texas, seeking indemnity for the loss of the cargo. After extensive litigation, including an appeal, ACL obtained a Final Judgment against Trism, which Trism never paid and which remains unsatisfied.

18. The Defendants, the insurers of Trism Specialized Carriers Inc., declined a claim by the Plaintiff, ACL for payment of the unsatisfied judgment ACL had obtained against Trism in C.A. No 98-0987, *Mannesman Demag v. M/V/ CONCERT EXPRESS, et. al.*, in the United States District Court, Southern District of Texas. The Final Judgment is attached as Exhibit B.

19. Trism filed for bankruptcy in the proceeding in Missouri, but the bankruptcy court lifted the stay as to ACL to allow ACL to make claim directly against Trism's insurers. The Court's Order is attached as Exhibit C.

20. The declination of the Defendants to satisfy the Final Judgment against Trism was based upon an allegation that, while the Defendants had supplied Atlantic Container Line with a Certificate of Insurance certifying that Trism had $250,000 cargo damage coverage for each occurrence, the policy itself, which had not been shown to ACL, also contained a $250,000 deductible. This was a clear breach of the Certificate of Insurance issued to ACL.

21. The Certificate of Insurance, Exhibit A, specifically represented and certified that Defendant, National Union Fire Ins. Co., in the policy named Inland Marine Basic Policy No. 4646883, insured Trism for $250,000 per occurrence of cargo loss from November 1,

1993 to November 1, 1994. No deductible was disclosed or even mentioned, and Trism paid a large premium for the bogus policy.

22. The Defendant insurers are required to pay damages for losses and damages occasioned during the life of the insurance policy that remain unsatisfied at the expiration of thirty days from the serving of notice of the entry of judgment upon the attorney of the insured. Entry of judgment was served upon the attorney of the insured over thirty days before the filing of this claim. Said judgment described herein may be maintained against the Defendant insurers under the terms of the policy for the amount of such judgment.

23. The $250,000 deductible issued in the policy by the Defendant insurers is an issue of contract between Trism, the insured, and the Defendant insurers. The amount of deductible within the terms of the insurance policy is not a defense that the insurers can assert against a third-party beneficiary, ACL.

24. The Certificate of Insurance also represented that the Defendant, Lexington Insurance Co., in the policy numbered 8685777 insured Trism for $250,000 excess coverage to the National Union fire insurance policy from November 1, 1993 to November 1, 1994.

25. Furthermore, the Certificate of Insurance represented that the Defendant, Fireman's Fund Insurance Co., in the policy numbered XSP2384090, insured Trism for an additional $500,000 per occurrence, in excess of the aforementioned National Union's and Lexington's policies for the period from November 1, 1993 to November 1, 1994.

26. All conditions precedent under the sham National Union policy have been performed by the insured, Trism Specialized Carriers Inc, or have occurred, including payment of a large premium to each of the Defendants.

## AS A FIRST CAUSE OF ACTION

27. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 21 inclusive of this Complaint with the same force and effect as if set forth at length herein.

28. On or about November 1, 1993, Defendants entered a written contract for insurance coverage with Trism. Defendant, National Union Fire Insurance Co., collected a $37,500 premium from Trism for a policy that afforded no coverage, in exchange for issuing a Certificate of Insurance intended to mislead the Plaintiff into relying on the insurers' written Certificate of Insurance issued to ACL, certifying that Trism had $250,000 coverage for loss or damage to motor truck cargo carried by Trism.

29. The aforementioned representations were false and untrue. Policy No. 464883 was a sham and bogus policy that also contained a $250,000 deductible.

30. The aforementioned representations in the Certificate of Insurance were known by Defendants to be false when they made them.

31. Plaintiff ACL relied upon the representation of $250,000 Motor Truck Cargo coverage made in the Certificate of Insurance, and it was thereby induced to rely on the Defendants' written certification that Trism had $250,000 cargo coverage and other insurance when ACL entrusted its cargo to Trism. Now, Defendants claim there actually was no insurance because the policy also contained a $250,000 deductible. However, said deductible was wrongfully concealed and not disclosed in the Certificate of Insurance issued by defendants to ACL.

32. Under the circumstances, Plaintiff has a right to recover punitive damages that arise from the breach of the Certificate of Insurance contract in this instance because (1) the Defendants' conduct is actionable as the independent tort of fraudulent misrepresentation, (2) the tortious conduct was egregious in nature and highly morally culpable, or was actuated by evil and reprehensible motives, and (3) the egregious conduct was directed to the Plaintiff, and (4) the tortious conduct is part of a pattern directed at the public generally.

33. Defendant ACL demands $5,000,000 in punitive damages jointly and severally from each defendant.

## AS A SECOND CAUSE OF ACTION

34. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 27 inclusive of this Complaint with the same force and effect as if set forth at length herein.

35. A Final Judgment was entered in the Southern District of Texas against Trism in *Mannesman Demag v. M/V CONCERT EXPRESS,* in Civil Action H-98-987 on June 1, 2001. Trism was ordered to pay ACL damages of $100,000, attorneys fees of $43,923, pre-judgment interest at 6.5% per annum from July 23, 1994, compounded annually to the date of judgment, post-judgment interest at 3.78 per annum from the date of judgment until paid, and costs of court. See copy of "Final Judgment" attached hereto as Exhibit "A." Trism has not satisfied the judgment.

36. Defendants have failed and refused to pay the judgment on behalf of Trism, all in violation of Article 34, Section 3420, of the Insurance Law and other laws of the State of New York.

37. Defendants have also failed and refused to pay any part of the $5,000,000 punitive damages to which plaintiff is entitled, although payment thereof has been duly demanded by Plaintiff.

WHEREFORE, the Plaintiff respectfully requests:

a. Judgment against Defendants jointly, severally and in the alternative in the amount of $193,923, plus interest, costs and attorneys' fees, plus the amount of $5,000,000 for punitive damages, plus interest and costs thereon.

b. Judgment against the Defendants jointly, severally and in the alternative for all sums which the Plaintiff have expended to date in the investigation together with reasonable attorneys fees, costs, and disbursements of this action in an amount not less than US$75,000.00.

c. Judgment against the Defendants jointly, severally and in the alternative compensating the Plaintiff for the loss of business good will occasioned by the claim in an amount not less than US$75,000.00.

d. Judgment for indemnity and reasonable attorneys' fees, costs and disbursements of this action in favor of the Plaintiff and against the Defendants for a sum to be determined by the Court.

e. That the Plaintiff has such other and further relief as it may be entitled to receive.

## DEMAND FOR JURY TRIAL

Plaintiff, ATLANTIC CONTAINER LINE, INC., demands a trial by jury on all issues in this action.

Dated:     New York, New York
           March 27, 2006

                              DE ORCHIS & PARTNERS, LLP
                              Attorneys for Plaintiff
                              Atlantic Container Line, Inc.

                              By: _____
                              M.E. De Orchis (MD-3194)
                              61 Broadway, 26th Floor
                              New York, New York  10006-2802
                              (212) 344-4700